**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IAN RUDD,

        *Plaintiff*,

    v.

UNITED STATES OF AMERICA, *et al.*,

        *Defendants.*

Civ. Action No. 25-2646 (RDM)

**<u>MEMORANDUM OPINION</u>**

Proceeding *pro se*, Plaintiff Ian Rudd brings this action under the Mandamus Act, 28

U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the

Declaratory Judgment Act, 28 U.S.C. § 2201, against the Consul General for the U.S. Embassy

in Montreal, Canada, the Department of State, the Secretary of State, and the United States,

challenging Defendants' delay in processing his application for an EB-2 visa.  Now before the

Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dkt. 10.  For the reasons that follow, the Court will **GRANT** Defendants' motion and will

dismiss Plaintiff's complaint.

**I. BACKGROUND**

For purposes of resolving Defendants' motion to dismiss, the Court accepts the following

allegations from Plaintiff's complaint as true.  *See Janay v. Blinken*, 743 F. Supp. 3d 96, 102

(D.D.C. 2024).  The Court also relies on the administrative materials attached to Plaintiff's

complaint.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Plaintiff is a citizen of Canada, Dkt. 1 at 2 (Compl. ¶ 1), who petitioned for an EB-2 visa,

*id.* at 5 (Compl. ¶ 10).  EB-2 visas permit noncitizens with "advanced degrees" or "exceptional

abilit[ies]" that serve the national interest to enter the United States to work.  8 U.S.C. § 1153(b)(2)(A), (B).  On December 2, 2022, the United States Citizenship and Immigration Services ("USCIS") approved Plaintiff's petition.  Dkt. 1 at 5 (Compl. ¶ 11); *id.* at 12 (Ex. A).  On September 23, 2024, Plaintiff completed a visa interview with a consular officer at the U.S. Consulate Office in Montreal, Canada.  *Id.* at 5 (Compl. ¶¶ 12–13).  The following day, Plaintiff was informed that his application was being refused and placed in administrative processing pursuant to Section 221(g) of the Immigration and Nationality Act ("INA").  *Id.* (Compl. ¶ 14); *id.* at 32 (Ex. D).  The U.S. Consulate Office also asked Plaintiff to complete a supplemental information form and to provide an updated resume "with no time gaps for [] studies and work experience" to facilitate the processing of his visa application.  *Id.* at 32 (Ex. D) (emphasis omitted).  Plaintiff promptly supplied this information.  *Id.* at 32–33 (Ex. D).  Since then, Plaintiff and Defendants exchanged several emails about the status of his visa application.  *See generally id.* at 27–36 (Ex. D).  Plaintiff's application, however, has remained in administrative processing since his interview over eighteen months ago.  *Id.* at 5 (Compl. ¶ 15); Dkt. 14 at 4 ("As of December 29, 2025, Defendants have not issued a final decision."); Dkt. 18 at 2 (noting "sixteen (16) months of unresolved administrative processing since Plaintiff's September 2024 interview").

On August 9, 2025, Plaintiff filed this action against the United States, the State Department, Secretary of State Marco Rubio, and Consul General Robert Sanders.  *See* Dkt. 1 at 3 (Compl. ¶¶ 2–5).  Plaintiff alleges that Defendants' delay in processing his visa application has "caused significant professional, financial, and personal harm" to him.  *Id.* at 6 (Compl. ¶ 17).  Plaintiff seeks relief under the Mandamus Act, 28 U.S.C. § 1361, the APA, 5 U.S.C. § 706(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201.  *Id.* at 7–9 (Compl. ¶¶ 25–35).  He requests

a court order compelling Defendants to complete the adjudication of his visa application

"promptly" and "[d]eclare that Defendants' failure to complete adjudication . . . for over 319

days . . . constitutes unlawful withholding and unreasonable delay in violation of the

Administrative Procedure Act." *Id.* at 9–10 (Compl. Prayer).  In his response to Defendants'

motion to dismiss, Plaintiff clarifies that he seeks "[a]n order directing Defendants to complete

adjudication and issue a final decision" within "60 days from entry of the Court's order," or, in

the alternative, an order requiring Defendants to provide "[a] sworn status declaration identifying

the specific steps remaining for Plaintiff's case" and a "[s]tatus report[] every 30 days until a

final decision is issued."  Dkt. 14 at 7–8.

Pending before the Court is Defendants' motion to dismiss Plaintiff's complaint for

failure to state a claim pursuant to Rule 12(b)(6).[1]  Dkt. 10.  The motion is fully briefed and ripe

for consideration.  *See* Dkt. 10; Dkt. 14; Dkt. 16; Dkt. 17-1; Dkt. 18.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed.

R. Civ. P. 12(b)(6).  In evaluating such a motion, the Court "must first 'tak[e] note of the

elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the

---

[1] Defendants argue that Local Civil Rule 7(n)'s requirement that the agency file a certified list of
the contents of the administrative record with the filing of a dispositive motion does not apply
because Plaintiff challenges agency inaction, not final agency action.  Dkt. 10 at 23 n.3.  This
Court has previously rejected Defendants' argument that Local Civil Rule 7(n) does not apply to
unreasonable delay claims.  *See Janay*, 743 F. Supp. 3d at 104–05.  Nonetheless, because the
Court "concludes that the administrative record is unnecessary to decide the threshold legal
questions presented by the pending motion to dismiss," it will waive compliance with Local
Civil Rule 7(n).  *Id.* at 105.

plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)).  The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted).  The Court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

### III. ANALYSIS

After Plaintiff's visa interview, the consular officer refused his visa application pursuant to Section 221(g) of the INA, Dkt. 1 at 5 (Compl. ¶ 14); *id.* at 32 (Ex. D), which provides that "[n]o visa or other documentation shall be issued to an alien if . . . it appears to the consular officer . . . that such alien is ineligible to receive a visa," 8 U.S.C. § 1201(g).  A refusal pursuant to Section 221(g) is based on a consular officer's determination that the applicant has failed to carry his burden of establishing that he is eligible for a visa.  But that does not necessarily end the matter.  Rather, when an application lacks sufficient support, "a consular officer may determine that additional information . . . may help establish an applicant's eligibility for a visa." U.S. Department of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-

processing-information.html (https://perma.cc/G6GV-A2TN).  If so, the consular officer may place a refused application in administrative processing, which enables the officer to "re-open and re-adjudicate the applicant's case" upon the receipt of new information showing that the applicant has become eligible for a visa.  *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam).

That is what happened here.  The consular officer placed Plaintiff's application into administrative processing, where it has remained for over a year and a half.  Plaintiff now seeks relief based on Defendants' alleged "failure . . . to complete adjudication" of his visa application, Dkt. 1 at 8 (Compl. ¶ 30); that is, he seeks an order compelling Defendants to complete the administrative processing of his application and to issue a final determination.  He brings claims under the Mandamus Act and the APA, both of which authorize federal courts to compel an agency to act when the agency has violated "a clear duty to act."  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation modified).  Defendants urge the Court to dismiss Plaintiff's claims for three reasons.  First, they argue that Plaintiff's claims fail because he does not identify a discrete agency action that a consular officer was required, but failed, to take.  Dkt. 10 at 9–14.  Second, they argue that Plaintiff's claims are barred by the consular nonreviewability doctrine.  *Id.* at 14–17.  Finally, they argue that Plaintiff has failed to state a plausible claim that the adjudication of his visa application has been unreasonably delayed.  *Id.* at 17–23.  Because the consular nonreviewability doctrine is not a jurisdictional defense, *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028–29 (D.C. Cir. 2021), the Court will begin and end with Defendants' first argument.

Defendants seek dismissal of Plaintiff's claims on the ground that Plaintiff "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa

Application now that it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g)." Dkt. 10 at 9.  That argument implicates Plaintiff's claims under both the Mandamus Act and the APA. When a visa applicant seeks to compel a decision on his application, "'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).

The Mandamus Act provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  "To show entitlement to mandamus, [a plaintiff] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Mandamus relief is therefore appropriate only where a defendant owes the plaintiff "a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer,* 466 U.S. 602, 616 (1984)).  The APA, in turn, authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  But the Supreme Court has clarified that "the only agency action that can be compelled under the APA is action legally *required.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis in original).  Like a claim for mandamus relief, then, "a claim under [5 U.S.C.] § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*"  *Id.* at 64 (emphases in original).  One difference between a Mandamus Act claim and an APA claim is that a plaintiff's failure to identify a clear nondiscretionary duty poses a jurisdictional hurdle for mandamus relief, *see Lovitky v. Trump*,

949 F.3d 753, 759 (D.C. Cir. 2020), but goes to the merits of an APA claim, *see L'Association des Americains Accidentels v. United States Dep't of State*, 633 F. Supp. 3d 74, 80 (D.D.C. 2022).

Here, Plaintiff relies on 8 U.S.C. § 555(b) and 22 C.F.R. § 42.81 in an effort to show that Defendants have a mandatory duty either to issue him a visa or to refuse his application with finality. *See* Dkt. 18 at 2, 3. By leaving his application in the limbo of "administrative processing," Plaintiff argues, Defendants have failed to discharge their duty to render a final decision—up or down. *See id.* at 3. Defendants respond that neither of these provisions require them to re-adjudicate Plaintiff's already-refused application, nor do they set a specific timeline to act. Dkt. 10 at 10–14; Dkt. 16 at 5–6. For support, Defendants invoke the D.C. Circuit's unpublished decision in *Karimova*, which affirmed a district court's dismissal of a claim that was, in all material respects, like the one now before the Court.

As in this case, the *Karimova* plaintiff's visa application had been refused by a consular officer pursuant to Section 221(g) of the INA, and the consular officer placed the application in administrative processing. 2024 WL 3517852, at *2. The plaintiff sought a court order compelling the consular officer to "re-adjudicate her already-refused application and, this time, to do it without subsequently retaining the application." *Id.* at *3. To establish that the consular officer had a duty to re-adjudicate her visa application, the plaintiff exclusively invoked 5 U.S.C. § 555(b), a provision of the APA that requires "each agency [to] proceed to conclude a matter presented to it with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id.* (citation modified). The D.C. Circuit rejected the plaintiff's argument, reasoning that 5 U.S.C. § 555(b) "simply expresses 'a congressional view that agencies should act within reasonable time frames,'" *id.* (quoting *Telecomms. Rsch. &*

*Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")), while "leav[ing] officials ample room for judgment based on the circumstances," *id.*  The court further explained that the "generality and indistinctness" of § 555(b) posed "particularly acute problems" for the plaintiff given "our starting point . . . that consular officers have broad discretion when adjudicating visa applications" and the "background principle of judicial abstinence" from reviewing consular decisions.  *Id.* at *4, 6.

 *Karimova* is an unpublished opinion, and decisions of this Court have disagreed about its precedential force.  *Compare Ibrahim v. Spera*, No. 23-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (treating *Karimova* as precedential), *with Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (declining to treat *Karimova* as precedential); *see also Seifan v. Sweeney*, No. 25-261, 2025 WL 2171093, at *3 (D.D.C. July 31, 2025) (collecting district court cases splitting on the precedential effect of unpublished circuit decisions).  But even if *Karimova* is non-precedential, the Court finds its essential reasoning persuasive and concludes that 5 U.S.C. § 555(b) does not impose a clear legal duty on consular officers to re-adjudicate a visa application that has been refused and placed in administrative processing.

 Nor is the Court persuaded that any sub-provision of 22 C.F.R. § 42.81 imposes a non-discretionary duty on consular officers to complete administrative processing within a specified time.  Start with 22 C.F.R. § 42.81(a).  22 C.F.R. § 42.81(a) provides that once a visa application "has been properly completed and executed before a consular officer," "the consular officer must issue the visa," "refuse the visa under [Section] 221(g) [of the INA]," or "discontinue granting the visa" under circumstances not relevant here.  Plaintiff contends that "the governing regulation provides that a consular officer 'must issue' or 'refuse' a visa."  Dkt. 18 at 2.  But "[i]n *Karimova*, the D.C. Circuit held that once a noncitizen's visa is refused, he has 'received

8

the "refused" decision that the law [(*i.e.*, 22 C.F.R. § 42.81)] expressly authorizes as one of the allowed actions on a visa application.'" *Seifan*, 2025 WL 2171093, at *5 (alteration in original) (citing *Karimova*, 2024 WL 3517852, at *4 (citing 22 C.F.R § 42.81)).  The Court agrees with the *Karimova* panel, and this Court's *Seifan* decision, that "22 C.F.R § 42.81(a) does not establish any additional action for the government to take after an application is refused" by being placed into administrative processing.  *Id.*  Nothing in 22 C.F.R. § 42.81(a) requires a consular officer to reconsider a refused application placed in administrative processing, much less requires that the consular office do so within a specified timeframe.

Plaintiff argues that a nondiscretionary duty emerges from 22 C.F.R. § 42.81 more generally because it "also recognizes continued treatment of refused cases, including reconsideration upon new evidence and further action following a refusal."  Dkt. 18 at 2.  The rest of 22 C.F.R. § 42.81, however, addresses the procedures by which visa refusals may be issued, retained, and reviewed.  Section § 42.81(b) relates to the retention and return of an applicant's documents after a visa refusal; Section 42.81(c) governs the procedures by which "the principal consular officer at a post" reviews and approves or disagrees with a consular officer's refusal decision, allowing deferral of "a review of the refusal" if the "grounds of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates the intention to submit such evidence," 22 C.F.R. § 42.81(c); Section 42.81(d) allows the State Department to request a report regarding specific visa refusals, 22 C.F.R. § 42.81(d); and Section 42.81(e) requires reconsideration of a refused visa application if "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based," 22 C.F.R. § 42.81(e).

9

But nothing in 22 C.F.R. § 42.81 recognizes or establishes a "clear and indisputable" duty to reconsider an application in administrative processing within a specified timeframe—and certainly not a "clear and indisputable" duty to act within the eighteen months that have now passed since Plaintiff's interview and initial rejection.  That is particularly the case given that the consular officer sought (and received) additional information, *see* Dkt. 1 at 32 (Ex. D), to assist in further processing Plaintiff's application.

As the D.C. Circuit stressed in *Karimova*, claims challenging the visa adjudication process are "not standard administrative fare."  2024 WL 3517852, at *5.  They arise "within a field that is 'vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power.'"  *Id.* (alteration in original) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)).  For that reason, the "admission and exclusion of foreign nationals" is "largely immune from judicial control."  *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (citation modified).  In this context, the Court cannot find "a crystal-clear legal duty," *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (citation modified), or a "legally required" duty to act on a particular timeframe, *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009), where a consular officer has reviewed an application, has refused it, and has placed the application in further administrative processing.

Because the absence of a clear, non-discretionary duty (1) to re-adjudicate Plaintiff's visa application or (2) to do so within a specified timeframe is dispositive for both his Mandamus Act and APA claims, the Court need not consider the applicability of the consular nonreviewability doctrine or whether Plaintiff can establish undue delay based on the *TRAC* factors. [2]  Moreover,

---

[2] The Court has previously explained that "the consular non[]reviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing."  *Janay*, 743 F.

because the Court lacks mandamus jurisdiction and because Plaintiff fails to state a claim for unreasonable delay under the APA, the action is not "already properly before the Court" for purposes of Plaintiff's request for declaratory relief. *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, 784 F. Supp. 3d 1, 35 (D.D.C. 2025) (citation omitted). The Court will, accordingly, grant Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 10, is hereby **GRANTED**, and the Court will **DISMISS** Plaintiff's Mandamus Act claim for lack of jurisdiction and Plaintiff's APA and Declaratory Judgment Act claims for failure to state a claim upon which relief may be granted.

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  April 8, 2026

---

Supp. 3d at 110 (citation modified); *see also Al-Gharawy*, 617 F. Supp. 3d at 11–17. The analysis set forth above has no bearing on that conclusion. Deciding whether consular officers have unfettered discretion over the process for reviewing visa applications requires a fundamentally different analysis than determining whether consular officers have a "crystal-clear legal duty," *In re Ctr. for Biological Diversity*, 53 F.4th at 670 (citation modified), to perform the action at issue here. And contrary to Defendants' suggestion, Dkt. 10 at 15–16; Dkt. 16 at 7, *Karimova* did not conclusively resolve the applicability of the consular nonreviewability doctrine to undue-delay claims. *Karimova* explicitly reserved the question whether the doctrine of consular nonreviewability "applie[d] in [that] case." 2024 WL 3517852, at *6.